United States District Court
District of Connecticut
FILED AT          BRIDGEPORT

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Kevin F. Rowe, Clerk

11 - 24 .........2003

By........C.W. Cody........
Deputy Clerk

| | |
|---|---|
| ALICIA DELK | : CIVIL ACTION NO.: |
| Plaintiff, | : |
| | : 3:02 CV 1310 (JCH) |
| VS. | : |
| | : |
| GO VERTICAL, INC. a/k/a "GO VERTICAL" | : |
| Defendant, | : November 13, 2003 |
| | : |

### Reply To Plaintiff's Objection To Defendant's Motion For Summary Judgment

## I.     Facts and Background

On August 28, 2003, the defendant filed a motion for summary judgment on the basis that the plaintiff signed a valid waiver thus giving up her right to bring claims of negligence against Go Vertical. Ms. Delk argues that although she signed the waiver, she did not "assent" to it and therefore the waiver is not valid. She then goes on a long diatribe against Go Vertical, apparently trying to divert the court from the issues at hand. *See* Memorandum of Law in Opposition to Motion for Summary Judgment [hereinafter, "Plaintiff's Objection"], at 11 – 25.

The defendant will readily agree that issues of the alleged negligence of Go Vertical cannot be decided in the context of a motion for summary judgment. It has a strong defense to those claims. However, though there may be disputes of fact as to the defendant's negligence, there is no dispute over the material facts concerning the signing of the waiver or the waiver's effect.

LAW OFFICES  •  **COONEY, SCULLY AND DOWLING**
HARTFORD SQUARE NORTH  •  TEN COLUMBUS BOULEVARD  •  HARTFORD, CONNECTICUT 06106-5109  •  (860) 527-1141

A.     <u>Material Facts Not In Dispute</u>.

Essential material facts are not in dispute. Ms. Delk was presented with a one page waiver. She had the opportunity to read the form but did not do so, or does not recall doing so. In either event, she signed the waiver. There is no claim that the defendant rushed her through the process, misled her as to the waiver or fraudulently induced her to sign it. Ms. Delk asked no questions about the form. She did not state that she had not read it. She signed it and went in.

B.     <u>Non-Material Facts In Dispute</u>.

In an effort to change the focus from Ms. Delk's signing of the waiver, and whether the waiver is effective, the plaintiff raises many issues in an attempt to show that Go Vertical was negligent. The short answer to that attempt is that if the waiver is effective, claims of negligence cannot be brought, and thus claims of Go Vertical's negligence, which are hotly disputed, are not <u>material</u> facts in dispute.

Nonetheless, plaintiff spends most of her objection on these issues in a clear attempt to divert the court from the legal issues raised in the summary judgment motion. She attempts to portray Go Vertical as a careless, hazardous place to climb, with inexperienced owners operating a rogue gym. Such a claim is inaccurate.

Perhaps the owners were inexperienced in 1994/1995 when the gym opened. By the time of this accident, in December 2001, they had 6 or 7 years of experience. The industry itself is in

2

its infancy as the first indoor gym opened only in 1987. The plaintiff gives misinformation to the Court when it states that "the Climbing Gym Association (CGA) is the organization within the rock climbing industry which oversees the proper running of climbing gyms." Plaintiff's Objection, at 24. In fact, there currently is no accreditation process. The CGA was in existence for approximately 8 years, from 1993 to 2001. During its existence, less than 10% of the indoor climbing gyms received accreditation from it. *Affidavit of James Schlegel*. The plaintiff's attempt to shock this Court by claiming Go Vertical is not accredited is hollow and misleading.

The defendant has an expert that puts into serious doubt the claims of negligence that the plaintiff makes. The Boulders is designated for free climbing, and no training or one-on-one supervision is required. *Affidavit*. Much like a person at a ski resort, in the Boulders area, a person is left to her own discretion. Interestingly, plaintiff's claims of negligence are essentially tangential claims. At no point does her expert claim that she was using improper techniques, was above a safe height, or that the mats were inadequate.[1]

---

[1] In focusing on the allegations of negligence, the plaintiff also omits and mischaracterizes certain facts in her objection. The plaintiff claims that no climbing on the climbing wall is allowed above 4 feet. Plaintiff's Objection, at 20. She does not explain that this distance was measured from the feet of the person, while when discussing the Boulders, she uses distances measured from her head. Plaintiff's Objection, at 13-14. Plaintiff also neglects to mention that the landing surfaces are different between the Boulders and the climbing wall. There are no mats at the base of the wall.

3

## II.    Argument

### A.    The plaintiff assented to the waiver

The plaintiff would have this Court adopt a rule of law that rejects the long standing principle that when an individual signs an agreement, that individual is bound to it. The plaintiff espouses a new rule where even though someone signs an agreement, that individual can get out of it by simply claiming "I didn't assent to it" or "I didn't read it." This position does great violence to the concept of contracts, and the ramifications of adopting the plaintiff's proposed rule of law would be dire and far-reaching. The plaintiff pushes this rule upon the Court because her case depends upon it. It is not, nor should it be, the law.

It is established in Connecticut, and recognized by the major treatises, that "the manifestation of assent may be made wholly or partly by written or spoken words *or by other acts or by failure to act*." ***Ubysz v. DiPietro***, 185 Conn. 47, 51 (1981) (emphasis added) (*quoting* Restatement (Second), Contracts § 21(1) (Tent. Dr. 1964)); *see* 1 Corbin, Contracts (1963) § 18; 1 Williston, Contracts § 22A (1957). One such act that manifests an individual's assent to an agreement is the act of signing an agreement. *See*, ***Incomm, Inc. v. Thremo-Spa, Inc.*** 41 Conn. Supp. 566, 570 (1991).

> The general rule is that where a person of mature years who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so.

4

*Ursini v. Goldman*, 118 Conn. 554, 562 (1934).  *See also,* **G & R Tire Distributors, Inc. v. Allstate Ins. Co.**, 177 Conn. 58, 61-62 (1979); **Palmer v. Hartford Ins. Co.**, 54 Conn. 488, 510 (1887).

In this case, there is no factual dispute; the plaintiff is of mature age and is able to read and write, and she signed the waiver.  As such, knowledge of the waiver's contents is imputed to her whether she claims to have read it and understood its terms or not.  The law presumes that upon signing the waiver, the plaintiff was aware of its contents and assented to them. The plaintiff, repeatedly and mistakenly, accuses the defendant of failing to submit evidence that the plaintiff assented to the waiver and asks the Court to deny its summary judgment motion on this basis. Plaintiff's Objection, at 2, 6, 7-8, 21.  The plaintiff, however, ignores that her signature is a presumption of assent.

The law does recognize exceptions to this presumption, but none are applicable to the plaintiff.

> ....but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter.

*Ursini v. Goldman*, 118 Conn., at 562.

The plaintiff attempts to claim that her situation *does* fit within the exceptions. Plaintiff's Objection, at 25.  Specifically, the plaintiff claims she did not assent to the waiver because 1) she

5

was rushed through the process; 2) she was not provided an opportunity to read the waiver before signing it; and 3) she was totally unfamiliar with the activity of rock climbing.

The plaintiff's claims that she was rushed through the waiver process and was not given ample opportunity to read the waiver before signing it are completely unsubstantiated and unsupported by the plaintiff's objection. First, the plaintiff relies on her deposition testimony in which she states that she signed the waiver "real quick" and that instead of reading it, she "assumed it was something that allows you to climb" and further that she "didn't pay attention." Plaintiff's Objection, at 3-4. She does not claim that the defendant rushed her through the process.

What the plaintiff establishes in her objection by citing her deposition testimony is her own lack of attention and lack of interest when presented with the waiver. The plaintiff's testimony does not in any way suggest or infer that she was not given a chance to read the waiver or that she was denied an opportunity to ask any questions about the waiver or that she was given misinformation about the waiver. There is no action or inaction by any agent of the defendant that the plaintiff points to that supports her position that she was denied a reasonable opportunity to read and sign the waiver.

The third basis for claiming a lack of assent depends on a misstatement of the law. The degree of familiarity of the plaintiff with indoor climbing is not relevant to the issue of whether

6

or not the defendant acted fraudulently or unfairly when it presented the waiver to the plaintiff. Initially, the plaintiff correctly cites ***Smith v. Connecticut Racquetball Club***, 2002 Conn. Super. LEXIS 1869 (July 3, 2002) (J. Rush) in which the Court states "courts have denied summary judgment when a plaintiff raises issues of material fact, by counter-affidavit and other evidence, that the plaintiff was rushed through the process and not provided with an opportunity to read the waiver agreement before signing it." *Id.* at 3. The fact that the plaintiff had not visited the defendant's climbing establishment before or was unfamiliar with climbing is not germane to whether the plaintiff assented to the waiver.

The plaintiff then announces to this Court a fictitious rule of law (mistakenly noted as being established by the Connecticut Supreme Court) that states when a patron is unfamiliar with an activity, the plaintiff does not assent by signing the document alone. Plaintiff's Objection, at 12, 28-29. This is not the law. The case relied upon for this proposition, ***Salvatore v. 5 D's, Inc.*** 2001 Conn. Super. LEXIS 542 (February 20, 2001) (J. Doherty), is in fact a Superior Court case, not one decided by the Connecticut Supreme Court. The trial court in ***Salvatore***, stated that had the plaintiff been totally unfamiliar with the activity, it would "be more inclined" to accept that the plaintiff "relied upon the defendant to warn him of dangerous conditions ... and that he did not fully appreciate the import of the waiver...." *Id.* at 2.

7

The defendant submits that Judge Doherty's analysis is incorrect to the extent that it suggests that signing a waiver falls short of assenting to it when the signer is "totally unfamiliar" with the activity. This proposition flies in the face of repeated appellate endorsement of the rule that by signing an agreement, it is assented to. Judge Doherty's purported belief would lead to the same dire consequences in the world of contracts where a party could merely claim, "I have never done this before, so therefore I didn't *really* agree to the terms when I signed it."[2] The law does not impose a burden on a recreational facility to explain a waiver. The law states that a party signing a written agreement is presumed to have knowledge of its contents and to have agreed to them. Knowledge of its contents is imputed to the plaintiff even if she negligently fails to read it. *Ursini v. Goldman*, 118 Conn. 554, 562 (1934) (emphasis added).[3]

Connecticut courts have found patrons of recreational facilities to have assented to the waiver by the act of signing it. In addition to the cases identified on page 10 of the defendant's Memorandum of Law in Support of Motion for Summary Judgment, *Gagliardi v. World Gym*

---

[2] It is noted that the plaintiff was injured during her second day climbing Go Vertical. The plaintiff cannot accurately claim that she was "totally unfamiliar" with indoor climbing on the date she fell having climbed the day before without incident.

[3] Indeed, the plaintiff's own disclosed expert, when commenting on the legal issue of waivers, limits the standard to allowing a patron a reasonable opportunity to read it and not coercing the patron to sign it. Plaintiff's Objection, at 12 and Exh. F, paragraph 8 attached thereto. Furthermore, the waiver at issue in the present case provides a list of some of the risks inherent in climbing to inform a patron who is unfamiliar with the activity whereas the waiver in *Salvatore* is not noted as doing so.

8

*Fitness*, 2002 Conn. Super. LEXIS 3188 (August 27, 2002) (J. Berger) involved a patron to a gym who slipped due to sweat on the gym floor. The Court found that the plaintiff "had the opportunity to review the agreement before it was signed" and granted the defendant's motion for summary judgment. *Id.* at 2.

The case most on all fours with the present one is the case relied upon by the plaintiff, *Smith v. Connecticut Racquetball Club*, 2002 Conn. Super. LEXIS 1869 (July 3, 2002) (J. Rush).[4] In that case, the plaintiff, injured while using a treadmill, signed an affidavit in which she averred that 1) she did not discuss the waiver with anyone; 2) she was not told what the waiver contained; 3) she was not told to read it or discuss it with an attorney; and 4) she would not have signed the waiver had she known that it released the defendant from liability for the defendant's own negligence. *Id.* at 3. The Court went on to note that:

> The plaintiff does not attest, however, that she was denied an opportunity to read the waiver, or that she was induced to sign it through the defendant's fraudulent conduct. Therefore, the plaintiff has not met her burden of producing evidence to raise an issue of material fact that she did not assent to the terms of the waiver.

The same conclusion must be arrived at in the present case. The plaintiff has failed to submit to the Court <u>any</u> evidence suggesting that the defendant did not give her ample

---

[4] Again, the plaintiff repeatedly refers to the *Smith* case as being decided by the Connecticut Supreme Court. The case was decided by Judge William B. Rush, a Superior Court judge in the Judicial District of Fairfield at Bridgeport.

9

opportunity to review the waiver.  The plaintiff signed the waiver and is presumed to have assented to it.  The plaintiff has offered no evidence raising any triable issue.

The plaintiff's arguments concerning the training of the defendant's employees and her reliance on the vague statements in her expert's report similarly miss the point.  These are distractions aimed to divert the Court from the fact that the plaintiff signed, and therefore assented to, the waiver. Nowhere in the plaintiff's objection is there any evidence of any kind that suggests that the defendant did not give the plaintiff sufficient opportunity to read and sign the waiver.  This is the relevant inquiry and the plaintiff's objection fails to raise any genuine issue of material fact.

B.      The Waiver Is Valid

The second significant issue is whether the provision waiving liability for any claimed negligence of Go Vertical is valid.  In discussing the second issue, the parties have contrasting interpretations of the recent *Hyson v. White Water Mountain Resorts of Connecticut* decision. The plaintiff accuses the defendant of "remarkably" relying "solely and exclusively on the dissent issued in the *Hyson* case, thereby ignoring the majority decision which clearly supports the position of the plaintiff/respondent in the case at bar." Plaintiff's Objection, at 26.  In point of fact, it is the plaintiff who is ignoring the limiting language of the majority decision, and the very

10

clear implication by the dissent as to how the Court will rule in a case involving a waiver that explicitly waived negligence.

The plaintiff implies that **Hyson** has definitively ruled that waivers of negligence are not valid. That is not the majority decision. In **Hyson**, the Court was faced with a document that did NOT waive negligence of the operator. The Court ruled that a document that did not contain express language releasing a party from its own liability would not be interpreted as releasing a party from its liability. It stated:

> [i]n keeping with the well established principle, however, that 'the law does not favor contract provisions which relieve a person from his own negligence' … we conclude the better rule is that a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides.

*Id.* at 643 (*quoting **Griffin v. Nationwide Moving & Storage Co.**, 187 Conn. 405, 413 (1982)).

While the majority opinion reserves making the next logical step, stating in footnote 11; "We do not decide today whether a contract having such express language would be enforceable to release a party from liability for its negligence," *Id.* at 643, n. 11., the dissent believes the court will so rule. "Put differently, the majority concludes that unless an exculpatory clause explicitly states that the signatory is releasing all claims sounding in negligence, the release will not be enforceable." *Id.* at 644. The dissent, of course, would be expected to uphold the waiver in Go Vertical, as it found the waiver in **Hyson** to be valid. Thus, in no way does **Hyson** support

11

the plaintiff's position.  Instead, it leaves the issue open, and the better reading is that a properly drafted waiver would be upheld.

The plaintiff criticizes the waiver because the language at issue was not put in bold.  Without citation, the plaintiff claims that valid waivers are in bold print.  That may or may not be the case of lengthy contracts where the waiver is but one clause out of many in a multi-page document.  Here, there is only a one page document.  It deals with only one broad issue, and the title makes the subject matter clear.[5]  Either everything should have been put in bold, thus making it a multi-page document, or everything in the same type, as all provisions have the potential to impact the plaintiff's ability to maintain an action in one form or another.

The plaintiff, in her brief, refers to the phrase "magnifying glass and lexicon," which is used in *B & D Associates, Inc. v. Russell*, 73 Conn. App 66.  In *B & D Associates*, the Appellate Court upheld a waiver of negligence clause, which was in paragraph 24 of a lease.  In that paragraph, albeit it in a commercial lease, there was no bold language indicating the waiver, and

---

[5] In a similar case where the validity of the waiver was challenged and upheld, *Connors v. Reel Ice, Inc.*, 2000 Conn. LEXIS 1926 (July 26, 2000) (J. Wagner), the Court stated, "[t]he language and the title of the five paragraph release is unambiguous and above the plaintiff's signature contains language clearly putting the plaintiff on notice that he is giving up substantial rights." There, the waiver was entitled "AMATEUR ATHLETIC WAIVER AND RELEASE OF LIABILITY".  Here, the waiver is entitled "ASSUMPTION OF RISK, RELEASE AND INDEMNIFICATION FOR GO VERTICAL, INC." and also contains language above the signature line alerting the signer of the waiver's contents, i.e., "This assumption of risk, Release and Indemnification shall be effective and binding upon me and upon my assigns…."

12

the language used was typical to that of a lease. Indeed, as the **B & D Associates** court said "this does not imply that only simple or monosyllabic language can be used in such clauses." *Id* at 72. The language in the waiver at issue was clear. Ms. Delk could have read it before she signed it, and she could have asked questions. Instead, she quickly signed the document, ignoring its import.

C.    Portions Of The Plaintiff's Submission Should Not Be Considered

In her opposition, the plaintiff has submitted several statements and an expert's report. These statements and reports should not be considered in whole because they do not meet standards for admissibility and in part because they contain non-material facts, or opinions that do not meet the standards of admissibility.

Rule 56 (e) permits the use of supporting or opposing affidavits if made on personal knowledge, contain facts as would be admissible in evidence and show affirmatively that the affiant is competent to testify.   By definition, an affidavit is a sworn statement, declared to be true under penalties of perjury.  A written statement signed under the penalties of perjury is also permitted.  Moore's Federal Practice § 56.14 (1) (b).  Unsworn statements must be disregarded because a court may not consider unsworn statement when ruling on a motion for summary judgment. *Adickes v. .H. Kress & Co.*, 398 U.S. 144, 158, n 17, **Pollack v. Pollock**, 154 F3d. 601 611 n.20 (6th Cir 1998) (citation omitted).   This rule extends to experts' reports.  "The substance

13

of this report was not sworn to by the alleged expert. Therefore the purported expert's report is no competent to be considered on a motion for summary judgment." *Fowle v. C& C Cola*, 868 F2d 59, 67 (3rd Cir. 1989). Pursuant to 28 USC § 1746, unsworn declarations may be considered if it contains a statement by the declarant that it is executed under penalty of perjury.

The statements of Sarah Mullins, (plaintiff's Exh. B), Crystal Bennett, (plaintiff's Exh. E), and the expert report of Bob Clark, (plaintiff's Exh. F) do not meet the standards of admissibility in toto, as they are not properly sworn to, and should not be considered by this court. Mr. Clark's report is merely a letter to plaintiff's attorney. The statements of Ms Mullin and Ms. Bennett clearly fall short of the "penalty of perjury" test, as neither statement is signed under the penalties of perjury, and both statements contain caveats. Both statements end with the sentence "I have read the above statement and it is true and correct to the best of my knowledge." Such a statement is not sufficient.

Even if the statements of Ms. Mullins and Ms. Bennett are properly before the court, substantial portions of each should not be considered because they are either not relevant, or not based on personal knowledge. Ms. Mullins' affidavit describes her experience in signing in on December 13, 2001, the first day that Ms. Delk was at Go Vertical. Her experiences at the sign in, which would appear to uphold the defendant's position that nothing at the sign-in process voids Ms. Delk's signature, are her experiences, and not relevant to Ms. Delk's experience. Her

14

statement carefully notes that she "believes" that Ms. Delk's experience was the same as hers. Such is not an admissible statement. She further describes her experience at Go Vertical, and then utters an opinion on training. Neither is relevant or admissible. Certainly her opinion is not of the expert kind and should be excluded.

Much of Ms. Bennett's statement suffers from the same infirmities. She offers statements that are not material to the issue in dispute, offers her belief, not statement of fact, of post-accident changes that may or may not have occurred which are certainly inadmissible. *Sanderson v. Steve Snyder Enter, Inc.*, 196 Conn. 139, 143 (1985). Interestingly, she indicates that Ms. Delk's accident was just that, a pure accident. Nowhere in plaintiff's submission is it alleged that Go Vertical was at fault for the accident itself.

Mr. Clark's report is totally lacking in any of the requirements of admissibility. It is not sworn to, the foundation of his opinions are not clearly set forth, nor can his qualifications be presumed. Further, his statements are either not relevant to the motion or invade legal doctrine which he admits he is not competent to discuss.

## III.    Conclusion

For the foregoing reasons, the defendant's Motion for Summary Judgment should be granted.

15

**DEFENDANT, GO VERTICAL, INC.**

BY _____

**Paul A. Croce, II** for
Cooney, Scully and Dowling
Hartford Square North
Ten Columbus Boulevard
Hartford, Connecticut 06106
(860) 527-1141/Fed Bar #ct22070

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to all counsel and *pro se* parties

of record on November 13, 2003 as follows:

Kenneth J. Levine, Esq.
Levy & Droney, P.C.
74 Batterson Park Road
Farmington, CT 06032

William H. Cooper, Esq.
Marvin A. Cooper, P.C.
175 Main Street, Suite 706
White Plains, NY 10601

_____
Paul A. Croce, II

#175076

16

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALICIA DELK | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| | : | 3:02 CV 1310 (JCH) |
| VS. | : | |
| | : | |
| GO VERTICAL, INC. a/k/a "GO VERTICAL" | : | |
| Defendant, | : | November 7, 2003 |
| | : | |

**AFFIDAVIT OF JAMES SCHLEGEL**

1. I am over the age of 18 and I believe in the obligation of the oath.

2. I have personal knowledge of the facts contained herein.

3. I am currently employed as the Owner and President of Petra Cliffs Climbing Center in Burlington, Vermont.

4. I have been retained by the defendant in this lawsuit, Go! Vertical, Inc., to serve as an expert witness on their behalf for issues relating to this lawsuit.

5. In addition to owning and being the President of Petra Cliffs Climbing Center indoor climbing facility, I was Vice President and Managing Partner in the Burlington Rock Gym in Essex Jct., Vermont from 1996 – 1998, Director of Climbing Programs at Racquets Edge in Essex Jct., Vermont from 1994 – 1996, American Sport Climbing Federation route judge 1996 – 2003, member of the Board of Directors for the Junior Competition Climbing Association (JCCA) in 1995, Regional Coordinator for New England of the JCCA 1995 – 1998, Regional Coordinator for New England of the United States Competition Climbing Association (USCCA) in 1999, and I have been professionally teaching outdoor rock climbing for approximately 10 years. I served as a reviewer for the Climbing Gym Association in February 2001.

6. The Climbing Gym Association (CGA) was founded in 1993 and was disbanded in 2001.

7. The CGA was and remains the only association of any type that sponsored an accreditation program for indoor climbing facilities.

8. Based upon my experience in the CGA and upon my familiarity and experience with

the indoor climbing industry, in 2001 less than 10% of stand alone indoor climbing facilities had received accreditation from the CGA.

9.  The plaintiff's expert, Bob Clark, apparently maintains designations of PSIA, AASI and AMGA. The PSIA designation stands for the Professional Ski Instructors Association. The AASI designation stands for the American Association of Snowboard Instructors. The AMGA designation stands for the American Mountain Guide Association. The AMGA involves itself strictly with outdoor activities and does not accredit or otherwise give any credentials for indoor climbing facilities.

10. The first indoor climbing facility in the United States, Vertical World Co., was opened in 1987 and was owned and operated by Richard Johnston and Dan Cauthorn.

11. The sign in procedure at Go Vertical, Inc., including the procedure for the signing of waivers was appropriate. It is the responsibility of the participant to read what he or she signs. Training of novice patrons for climbing on boulders or caves is not standard practice. In bouldering, if mats are adequate, climbs up to 25 feet above the ground are permissible. It is not standard for a facility to provide spotters for each climber. Floor supervision is appropriate, but constant floor supervision is not necessary. The purpose of an employee walking the floor is to ensure that patrons are behaving properly and not getting into dangerous situations. It is not a dangerous situation requiring intervention if a novice climber is climbing an easy route, is not above 10-12 feet and if there is adequate matting. From Ms. Delk's description of the accident, she was acting appropriately, she was at an appropriate height when she dismounted, and there was nothing that she was doing that would have attracted the attention of a floor walker. Go Vertical, Inc. met all applicable standards pertaining to the issues in this case.

_____
James Schlegel

Subscribed and sworn to this
___7ᵗʰ___ Day of ___Nov._____, 2003,
before me.

_____
Notary Public/Commissioner of
the Superior Court

Susan Smith v. Connecticut Racquetball Club

CV97342983S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
FAIRFIELD, AT BRIDGEPORT

*2002 Conn. Super. LEXIS 1869*

June 3, 2002, Decided
June 3, 2002, Filed

NOTICE: [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: Motion for Summary Judgment granted.

LexisNexis (TM) HEADNOTES - Core Concepts:

JUDGES: RUSH, J.

OPINIONBY: RUSH

OPINION: MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (# 123)

The plaintiff alleges that, while she was lawfully on the defendant's premises and using the defendant's treadmill, she fell off the treadmill and suffered injuries. The plaintiff alleges that her fall was caused by the defendant's negligence and carelessness, in failing to train, supervise and/or instruct the plaintiff in the proper use of the treadmill.

On April 3, 1998, the defendant filed its amended answer in which it denies the material allegations of the plaintiff's complaint and alleges two special defenses. The second special defense alleges that the plaintiff had executed a waiver releasing the defendant from liability.

The defendant filed a Motion for Summary Judgment ( # 123) asserting that it is entitled to summary judgment because the plaintiff signed a release of liability in favor of the defendant. The plaintiff asserts that the release is

unenforceable for two reasons. [*2] First the language used in the release does not explicitly exculpate the defendant from its own negligence; and second, the plaintiff signed the release without reading or understanding it. The plaintiff argues further that summary judgment should be denied because this is a negligence case, and deciding whether a particular defendant was negligent is a question of fact inappropriate for disposition on summary judgment.

"The [Connecticut] Supreme Court has not yet decided whether waivers of negligence claims by adult participants in sporting events are enforceable." *Foley v. Southington-Cheshire Community YMCA, Inc.*, Superior Court, judicial district of New Britain, Docket No. 502023 (March 28, 2002) (Shortall, J.) (31 Conn. L. Rptr. 673, 673). The law, however, "does not favor contract provisions which relieve a person from his own negligence." *Griffin v. Nationwide Moving & Storage Co., 187 Conn. 405, 413, 446 A.2d 799 (1982).* "Courts have shown a tendency to hold [releases contained in preprinted form contracts] against public policy when entered into by professional service providers in the course of dealing with the general public . . . Such provisions [*3] have been upheld, however, under appropriate conditions, such as the assent of both parties." (Citations omitted.) *Mattegat v. Klopfenstein, 50 Conn. App. 97, 103-04, 717 A.2d 276 (1998).* n1 "It is generally recognized that agreements exempting owners and operators of sports facilities from liability for negligence entered into with patrons of the facility are valid and enforceable against a patron." (Internal quotation marks omitted.) *Slauson v. White Water Mountain Resorts of Connecticut*, Superior Court, judicial district of New Haven at New Haven, Docket No. 432460 (May 30, 2001) (Jones, J.) (29 Conn. L. Rptr. 605, 606).

n1 The generally accepted rule is that waivers or releases from liability are enforceable. 57 Am.Jur.2d, Negligence § 53 (2000). Other jurisdictions recognize exceptions to enforcing waivers or releases for reasons of public policy or when the public interest is involved. 57 Am.Jur.2d, Negligence § 54 (2000). Jurisdictions have held waivers or releases from liability unenforceable for public policy reasons in the following circumstances: when the defendant is engaged in a business involving the public interest, when the bargaining power between the parties is not equal, when the release is overly broad, when the release violates a duty the defendant owed to the plaintiff pursuant to a statute, when the language of the waiver or release was not conspicuous, when the release attempts to exculpate the defendant from liability for intentional and reckless misconduct, and when there was a lack of integrity in the bargaining process. Annot., *54 A.L.R.5th 513, 556-60 (1997).* Other jurisdictions have been very reluctant to recognize these exceptions. Annot., *54 A.L.R.5th at 560-64 (1997).* Connecticut courts are reluctant to hold waivers and releases as unenforceable for violating public policy, and have held that "the principal that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests . . ." *Mattei v. New Haven*, Superior Court, judicial district of New Haven at Meriden, Docket No. 265897 (June 19, 2001) (Booth, J.) (29 Conn. L. Rptr. 748, 749). Connecticut courts, however, recognize public policy exception for adults who sign waivers on behalf of minors; *id.*, 748-49; *Fedor v. Mauwehu Council, 21 Conn. Supp. 38, 40-41, 143 A.2d 466 (1958);* when there is unequal bargaining power between the parties; see *Fedor v. Mauwehu Council, supra, 21 Conn. Supp. at 40;* or when the release would exempt a party from liability for violating a duty established by a statute or ordinance; *Mattei v. New Haven, supra,* 29 Conn. L. Rptr. 749.

**[*4]**

"Courts have seemed to take two views regarding the language that must be included in a waiver agreement for the purpose of barring negligence claims against an owner of a facility or its employees. Some courts require that specific language be included alerting the patron that he or she waives any claim for injury caused by the actual negligence of the facility operator . . . Other courts

disagree with this view. They take the position that exculpatory agreements must be strictly construed but hold that the word *negligence* need not be used; the operator of a sports facility can be protected by an agreement in which the patron releases the operator from *any claim*." (Emphasis added; internal quotation marks omitted.) *Foley v. Southington-Cheshire Community YMCA, Inc., supra,* 31 Conn. L. Rptr. 673.

"The majority of trial courts that have recently addressed this issue . . . take the position that specific language, i.e., the word 'negligence,' must be used to waive effectively claims for negligence against facility operators." *Id.,* 673-74. Trial courts have also held that a waiver must "specifically alert the patron that he or she by signing the waiver is [*5] releasing the operator of the facility from injury caused by the operator's own negligence . . . These courts [reason] that this is the better approach because what may be *common sense* to judges and lawyers who are used to interpreting the ambit of legal phrases is not necessarily obvious to the nonlawyer public who by signing these agreements give up valuable rights." (Citations omitted; emphasis added; internal quotation marks omitted.) *Id.,* 674.

Accordingly, "where the waiver does explicitly absolve the defendant from liability for its own negligence, Superior Courts have held the language contained in the waiver form is sufficient to release the facility operator from liability." *Id.;* see also *Malin v. White Water Mountain Resorts of Connecticut, Inc.,* Superior Court, judicial district of New Haven at New Haven, Docket No. 423774 (March 16, 2001) (Blue, J.) (29 Conn. L. Rptr. 374, 375) ("Unless the contract 'clearly, unequivocally, specifically, and unmistakably expresses the parties' intention to exculpate the [defendant] from liability resulting from its own negligence, the [contract] is insufficient for that purpose' "); *Connors v. Reel Ice, Inc.* [*6] , Superior Court, judicial district of Hartford, Docket No. 579993 (July 24, 2000) (Wagner, J.) (27 Conn. L. Rptr. 610, 611) (waiver agreement making explicit references to defendant's negligence is enforceable); *Helbling v. Quinnipiac College,* Superior Court, judicial district of New Haven at New Haven, Docket No. 396846 (August 6, 1999) (Jones, J.) (25 Conn. L. Rptr. 235, 236-37) (issue of material fact exists because waiver does not contain language explicitly exculpating defendant from its own negligence, and plaintiff's affidavit avers that he understood waiver was only exculpating defendant from liability for plaintiff's negligence); *Bashura v. Strategy Plus, Inc.,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 050871 (November 20, 1997) (Corradino, J.) (21 Conn. L. Rptr. 59, 62) (language of waiver must put

plaintiff on notice that he is releasing defendant from liability for defendant's own negligence).

Presumably, courts have upheld such waivers on the basis of "the general rule . . . that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is **[*7]** [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off . . . guard in the matter." (Internal quotation marks omitted.) *First Charter National Bank v. Ross, 29 Conn. App. 667, 671, 617 A.2d 909 (1992).*

Courts will not, however, enforce a waiver when the plaintiff did not assent to its terms. *DiUlio v. Goulet, 2 Conn. App. 701, 703-04, 483 A.2d 1099 (1984).* Accordingly, courts have denied a motion for summary judgment when a plaintiff raises issues of material fact, by counter affidavit and other evidence, that plaintiff was rushed through the process and not provided an opportunity to read the waiver agreement before signing it. *Id.* compare, *Lombardo v. Maguire Group Inc.,* Superior Court, judicial district of Middlesex at Middletown, Docket No. 077767 (June 6, 1997) (Arena, J.) (3 Conn. **[*8]** Ops. 760, 761) (summary judgment granted because plaintiff did not file counter affidavit to raise an issue of material fact "regarding the scope of the waiver, the intent of the parties, or the adequacy of the notice"); see also *Ervin v. Hosanna Ministry, Inc.,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 048157 (November 8, 1995) (Skolnick, J.) (motion for summary judgment denied because issues of material fact exist as to whether plaintiff was induced to sign waiver through fraud, or whether she lacked contractual capacity because she was intoxicated and the defendant was aware or should have been aware of her condition).

In the present case, the waiver that the plaintiff executed specifically states that the plaintiff is releasing the defendant and the defendant's employees and agents "from any responsibility or liability for any injury to myself, including those caused by the negligent act or omission arising out of or connected with my participation in any activities of the Stratford Athletic Club or the use of any equipment at the Stratford Athletic Club." (Defendant's Motion for Summary Judgment, Exhibit B.) Beneath her signature on the **[*9]** waiver is a section which states "I HEREBY REPRESENT AND WARRANT . . . THAT I HAVE READ, REVIEWED AND COMPLETED THE ABOVE WAIVER CONSENT FORM . . ." (Emphasis in original.) (Defendant's Motion for Summary Judgment, Exhibit B.) Again, the plaintiff signed her name below this section.

The plaintiff admits in her deposition testimony that she signed the waiver. (Defendant's Motion for Summary Judgment, Exhibit A, pp. 18-19.) In her affidavit the plaintiff avers that she did not discuss the waiver with anyone, was not told what the waiver contained, was not told to read it or discuss it with an attorney and that she would not have signed the waiver if she had known that it released the defendant from liability for the defendant's own negligence. (Memorandum in Opposition, Exhibit A, PP3-5.) The plaintiff does not attest, however, that she was denied an opportunity to read the waiver, or that she was induced to sign it through the defendant's fraudulent conduct. Therefore, the plaintiff has not met her burden of producing evidence to raise an issue of material fact that she did not assent to the terms of the waiver. *First Charter National Bank v. Ross, supra, 29 Conn. App. at 671.* **[*10]**

Accordingly, the Motion for Summary Judgment is hereby granted.

RUSH, J.

June 3, 2002

John Salvatore v. 5 D'S, Inc.

CV990153131

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
WATERBURY, AT WATERBURY

*2001 Conn. Super. LEXIS 542*

February 20, 2001, Decided
February 20, 2001, Filed

NOTICE: [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: Accordingly, because the waiver and release signed by the plaintiff is valid and binding, the court finds that there is no genuine issue of material fact and the defendant's motion for summary judgment should be and is hereby granted.

LexisNexis (TM) HEADNOTES - Core Concepts:

JUDGES: Joseph W. Doherty, Judge.

OPINIONBY: Joseph W. Doherty

OPINION: MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for monetary damages for personal injuries which the plaintiff allegedly sustained when he fell while roller skating at the defendant's roller skating rink. The plaintiff alleges in his complaint that his injuries were due to the negligence of the defendant or its employees in one or more ways, including: "In that they failed to warn its patrons, including John Salvatore, of the dangerous conditions produced when a roller skate lacks a rubber stopper"; (Plaintiff's Complaint, Paragraph 7). In that same Paragraph 7, the plaintiff alleged four additional ways in which the defendant acted in a negligent manner--failure to provide safe equipment; [*2]  failure to properly repair the defective rollerskate;

failure to inspect the rollerskate and; failure to give a timely warning of the danger posed by the rollerskates.

On October 3, 2000, the defendant filed a motion for summary judgment on the plaintiff's entire complaint. Thereafter, on October 18, 2000, the plaintiff filed an objection to the defendant's motion for summary judgment. This motion is now before the court.

A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).* "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts [*3]  which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact . . ." (Citations omitted; internal quotation marks omitted.) *Miles v. Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000).* "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000).*

In the present case, the defendant argues that the plaintiff executed a valid and enforceable waiver on February 28,

1998, thereby precluding the plaintiff from recovery. n1 In response, the plaintiff argues that he did not have equal bargaining power with the defendant because, had he not signed the waiver, he would not have been permitted to skate. As a general matter, the Connecticut appellate courts have yet to rule on the enforceability of a waiver of negligence claims, signed by an adult participating in a recreational event. n2 "The general rule is that where a person of mature years [*4] and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off guard in the matter." *Ursini v. Goldman, 118 Conn. 554, 562, 173 A. 789 (1934).*

n1 The document is entitled: "WAIVER AND RELEASE TO ROLLER SKATE." The waiver states, in relevant part, that "I HEREBY EXPRESSLY AGREE: (1) TO ASSUME ALL RISK AND RESPONSIBILITY for any injuries or other damage I may sustain and any damages I may cause in 5 D's SKATING CENTER, INC... . (2) TO RELEASE THE RELEASEES, from ALL CLAIMS OF LIABILITY, for any injuries which I may sustain or any damage that may be caused to me or my property in connection with my activities at 5 D's SKATING CENTER, INC. (including, without limitation, injuries that may be caused from any equipment I may rent even if my injuries are caused in whole or in part by the negligence or fault of the RELEASEES, their employees or instructors) . . ." (Defendant's Memorandum, Exhibit B.) [*5]

n2 Similarly, "the Connecticut Supreme Court has not yet ruled upon whether or not a waiver of negligence claims, by an adult participant in an athletic event, can be enforced." *Connors v. Reel Ice Inc., 2000 Conn. Super. LEXIS 1926,* Superior Court, judicial district of Hartford, Docket No. 579993 (July 24, 2000) (Wagner, J.) (27 Conn.L.Rptr. 610, 611).

In the present case, the court finds that the defendant has met its burden of showing that no genuine issue of material fact exists. The waiver at issue contains express

language relieving the defendant of liability in the event a patron suffers an injury through the use of defective equipment. There is no dispute that the plaintiff signed this document prior to skating. (Defendant's memorandum, Exhibit A, p. 12.) Further, the plaintiff's deposition testimony indicates that he had signed similar documents in the past at the defendant's rink and that he had read the document at some point. It also indicates that the plaintiff had skated at the same rink at least a half dozen times before the date of his injury. (Defendant's memorandum, Exhibit A, pp. 14-15 and 9-10.) [*6] n3 That evidence permits the court to find that the plaintiff was familiar with the principles of roller skating and roller skating equipment--including roller skates. Had he been totally unfamiliar with the sport and its equipment, the court would be more inclined to accept his argument that he relied upon the defendant to warn him of the dangerous conditions regarding the skates and that he did not fully appreciate the import of the waiver he chose to sign before skating.

n3 It should be noted that excerpts of the plaintiff's deposition, attached as Exhibit A in the defendant's memorandum, are certified.

The court further finds that the plaintiff, in response, has failed to meet his burden of showing that there is a genuine issue of material fact because he fails to provide an evidentiary foundation to refute the non-existence of a genuine issue of material fact as it relates to the enforceability of the waiver. *Miles v. Foley, supra, 253 Conn. 385-86.* Similar to the plaintiff in [*7] *Connors v. Reel Ice Inc., 2000 Conn. Super. LEXIS 1926,* Superior Court, judicial district of Hartford, Docket No. 579993 (July 24, 2000) (Wagner, J.) (27 Conn. L. Rptr. 610, 611), the plaintiff was free to skate at another rink or not skate at all. n4 Additionally, there was no evidence that the plaintiff was induced by fraud or was misled in any way when he signed the waiver. *Ursini v. Goldman, supra, 118 Conn. 562.*

n4 Contrary to the plaintiff's contention, *Connors v. Reel Ice Inc., supra, (2000 Conn. Super. LEXIS 1926,* 27 Conn. L. Rptr. 610), is applicable to the present case. Although the plaintiff in *Connors v. Reel Ice Inc.* was injured by a third party instead of allegedly defective equipment, the plaintiff did bring a cause of action for negligence against the skating rink. *Id.* There was also a waiver signed by the plaintiff, essentially absolving the skating rink from specific acts of negligence. *Id.,* 611. Although somewhat factually different, it is submitted that

2001 Conn. Super. LEXIS 542, *

the same conclusion reached in *Connors v. Reel Ice Inc.*, should be reached in the present case: "the language and the title of the [waiver] is unambiguous and above the plaintiff's signature contains language clearly putting the plaintiff on notice that he is giving up substantial rights." *Id.*

**[*8]**

The plaintiff further argues that enforcing such a waiver would violate public policy. "It is well established that contracts that violate public policy are unenforceable." *Solomon v. Gilmore, 248 Conn. 769, 774, 731 A.2d 280 (1999).* "Public policy is established by our constitutions, statutes and legal precedents." *South Windsor v. South Windsor Police Union, 41 Conn. App. 649, 658, 677 A.2d 464,* cert. denied, *239 Conn. 926, 683 A.2d 22 (1996).* "A court should be cautious about holding contract provisions unenforceable because of violations of public policy unless the public policy reasons are absolutely clear such as barring attempted abrogation of ameliorative statutes or rectification of completely uneven bargaining power where a minor's interest for example are sought to be bound in an 'unfavorable way.'" *Arruda v. Donham and Dover Inv. Prop., 1994 Conn. Super. LEXIS 1803,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 520972 (July 11, 1994) (Corradino, J.) (12 Conn. L. Rptr. 112); see also *Lombardo v. Maguire Group Inc., 1997 Conn. Super. LEXIS 1543,* Superior Court, judicial district of Middlesex at Middletown, Docket No. 077767, (June 6, 1997) **[*9]** (Arena, J). Had the waiver been raised as a defense against a claim by the plaintiff that the defendant had intentionally caused his injuries or had caused them by gross or wanton negligence, the public policy argument would be much more compelling than in the instant case where an experienced adult skater is injured, according to his own allegations, by a defect in a skate which he never checked before wearing out onto the rink. (Defendant's memorandum, Exhibit A, p. 32).

In heeding the cautious approach taken by courts in evaluating whether contract provisions violate public policy; *Arruda v. Donham and Dover Inv. Prop., supra, 1994 Conn. Super. LEXIS 1803,* Superior Court, Docket No. 520972; the court finds that the waiver at issue does not violate public policy. This case clearly does not involve an abrogation of a statute and no minor's interests were involved. *Lombardo v. Maguire Group Inc., supra, 1997 Conn. Super. LEXIS 1543,* Superior Court, Docket No. 077767. The court finds that, in the present case, the public policy favoring freedom of parties of equal bargaining power to enter into a contract outweighs any disfavor the law may have for agreements exempting parties from their own negligence. As this court held, **[*10]** "Contracts which relieve a person of his own negligence are generally not favored in our courts. Such provisions, however, have been upheld under proper circumstances." *Connors v. Reel, supra, (2000 Conn. Super. LEXIS 1926,* 27 Conn. L. Rptr. 610, 611).

Under the facts alleged in the instant case, it would be improper to hold the plaintiff unaccountable for his own actions, specifically, signing the waiver. Accordingly, because the waiver and release signed by the plaintiff is valid and binding, the court finds that there is no genuine issue of material fact and the defendant's motion for summary judgment should be and is hereby granted.

By the Court,

Joseph W. Doherty, Judge

**Darren Gagliardi v. World Gym Fitness et al.**

CV000500627S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW
BRITAIN AT NEW BRITAIN

*2002 Conn. Super. LEXIS 3188*

**August 27, 2002, Decided**

**NOTICE: [*1]** THIS DECISION IS UNREPORTED
AND MAY BE SUBJECT TO FURTHER APPELLATE
REVIEW. COUNSEL IS CAUTIONED TO MAKE AN
INDEPENDENT DETERMINATION OF THE
STATUS OF THIS CASE.

**DISPOSITION:** Motion Granted.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** Berger, J.

**OPINIONBY:** Berger

**OPINION:** MEMORANDUM OF DECISION

The plaintiff, Darren Gagliardi, has brought the instant
action claiming personal injuries as a result of slipping
on a wet floor while exercising at the defendant, The
Fitness Group, LLC, d/b/a World Gym (hereinafter,
World Gym). The defendant now seeks summary
judgment based upon a general release and waiver in the
plaintiff's contract with the World Gym. The relevant
language states:

The member recognizes that there are dangers connected
with any physical activity and that the activities the
member may choose to enter at World Gym could result
in members sustaining physical injury and/or cause to
suffer illness. Member agrees that he/she is voluntarily
participating in these activities, and use of the facility
and premises (including the parking lot) and hereby
releases the club and their respective directors, officers
and employees from

. . .

(c) Any claim for personal injury sustained by any
member in, or about the facilities [*2] including without
limitation any claims for personal injuries resulting from
negligence of the club or its directors, officers or
employees, or the negligence of any other person using
the facilities and acknowledges that member uses the
facility at his own risk.

The plaintiff argues that not only does the waiver not
relieve the defendant of its own negligence, but it does
not reflect the intent of the parties. He states that after the
defendant's martial arts instructor, Leslie Richardson,
invited him into the aerobics room to spar, he slipped
while executing a particular maneuver. He maintains that
Mr. Richardson knew the floor was slippery after the
prior aerobics class. The defendant disagrees with
plaintiff's recitation of the facts and, notwithstanding,
argues that the waiver agreement constitutes a complete
defense to the plaintiff's claims.

Both parties cite Judge Corradino's exhaustive analysis in
*Bashura v. Strategy Plus, Inc.*, Superior Court, judicial
district of Ansonia/Milford at Milford, Docket No.
050871 (November 20, 1997, Corradino, J.) (21 Conn. L.
Rptr. 59), for support of their respective positions and
while Judge Corradino denied the motion for summary
[*3] judgment in that case, he did so because the general
release was not as specific as that existing in the present
case. Judge Corradino noted that "the waiver agreement
made no explicit reference to the operator's negligence."
*Id.*, 63. Such is not the case in the World Gym
agreement. Following his lead, other Superior Court
Judges have upheld waiver agreements similar to that in
this case. See, *Salvatore v. 5 D's Inc.*, Superior Court,
judicial district of Waterbury, Docket No. 153131
(February 20, 2001, Doherty, J.) (28 Conn. L. Rptr. 714);
*Connors v. Reel Ice, Inc.*, Superior Court, judicial district

of Hartford at Hartford, Docket No. 579993 (July 24, 2000, Wagner, J.) (27 Conn L. Rptr. 610).

There are, perhaps, disputed issues such as whether the plaintiff approached Leslie Richardson or whether Leslie Richardson approached the plaintiff requesting to spar or even whether the plaintiff or Mr. Richardson knew if the floor was slippery. The waiver agreement is clear, however, that the plaintiff has released the World Gym from any claim of personal injury resulting from the negligence of its employees. Thus, the above contested issues are not material. The only issue [*4] is whether the waiver agreement is valid--not whether Mr. Richardson asked the plaintiff to spar or whether he knew the floor might be wet from sweat. As noted by Judge Corradino, "it is generally recognized that agreements exempting owners and operators of sports facilities from liability for negligence entered into with patrons of the facility are valid and enforceable against a patron." *Bashura v. Strategy Plus, Inc., supra*, 21 Conn. L. Rptr. 61. Our appellate court has noted that "the general rule is that where a person [who is] of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person]

negligently fails to do so . . ." *Phoenix Leasing, Inc. v. Kosinski, 47 Conn.App. 650, 654, 707 A.2d 314 (1998);* see also *Salvatore v. 5 D's, Inc., supra*, Superior Court, Docket No. 153131 (28 Conn. L. Rptr. 714).

This court is not unsympathetic to the plaintiff's injuries. They are apparently real and serious. Yet, the plaintiff has alleged that he slipped on sweat on a gym floor. [*5] Athletes do sweat and there is nothing inherently wrong with the defendant attempting to protect itself from the reality of this potential hazard. The plaintiff, however, is a college graduate and a law student and had the opportunity to review the agreement before it was signed. He was familiar with the operation of gyms and experienced in the martial arts. Similar to the hockey player plaintiff in *Connors v. Reel Ice, Inc., supra*, the plaintiff herein was free to practice martial arts in another gym. This court finds no ambiguity in the contract's meaning; there is nothing about this agreement which suggests a violation of public policy.

Accordingly, there is no real issue to be tried and the motion for summary judgment is granted. *Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1939).*

Berger, J.

Christopher Connors v. Reel Ice, Inc.

CV 980579993S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
HARTFORD - NEW BRITAIN, AT HARTFORD

*2000 Conn. Super. LEXIS 1926*

July 24, 2000, Decided
July 26, 2000, Filed

**NOTICE:** [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motion for summary judgment by Reel Ice granted.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** Wagner, J., Judge Trial Referee.

**OPINIONBY:** Wagner

**OPINION:** MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY REEL ICE, INC.

In this three-count revised complaint dated May 11, 1999, Christopher Connors alleges negligence by Reel Ice Inc. (count one), ETR Enterprises LLC (ETR) (count two), and Eric Sergal (count three), arising out of a collision between Connors and Sergal in a hockey game at Enfield Twin Rinks on April 24, 1996.

Connors and the defendant, Sergal, participated on different teams in a noncheck men's adult hockey league. On that date their two teams faced off in a playoff game which proved to be very competitive. During the game, Connors pursued a loose puck along the boards when Sergal checked Connors into the boards causing serious injury to his shoulder. The defendant, Reel Ice, is alleged to be the owner and operator of the Enfield Twin Rinks.

On December 16, 1999, Reel Ice and ETR filed the motion for summary judgment as to counts one [*2] and two, respectively, on the grounds that the plaintiff signed valid waiver and release form releasing the defendants from liability and that Connecticut law bars negligence claims between co-participants in adult team contact sports, On March 6, 2000, this court granted a prior motion for summary judgment by ETR on a separate ground of lack of ownership leaving only the claim for summary judgment by Reel Ice as to count one. Count one alleges that Reel Ice, as the owner or possessor of the premises known as the Enfield Twin Rinks, was negligent in allowing Sergal to participate in the men's hockey league and by failing to take precautions to adequately protect the plaintiff from potentially dangerous players.

I.

The first ground claimed by Reel Ice, is based on its special defense alleging waiver of liability by plaintiff. The waiver in question signed by Connors on October 24, 1995 is entitled "AMATEUR ATHLETIC WAIVER AND RELEASE OF LIABILITY" and reads as follows:

> In consideration of being allowed to participate in any way in Enfield Twin Rinks Operating Co., Inc. athletic/sports programs, and related events and activities, the undersigned:
>
> 1. Acknowledge [*3] and fully understand that each participant will be engaging in activities that involve risk of serious injury, including permanent disability and death, and severe social and economic losses which might result not only from their own actions, inaction or

negligence of others, the rules of play, or the condition of the premises or any equipment used. Further, that there may be other risks not known to us or not reasonably foreseeable at this time.

2. Assume all the foregoing risks and accept personal responsibility for the damages following such injury, permanent disability or death.

3. Release, waive, discharge and covenant not to sue Enfield Twin Rinks Operating Co., Inc., its affiliated clubs, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, owners and leasers of premises used to conduct events, all of which are hereinafter referred to as "releasees," from demands, losses or damages on account of injury, including death or damage to property, caused or alleged to be caused in whole or in part by the negligence of the releasees or otherwise.

THE UNDERSIGNED HAVE READ THE ABOVE WAIVER AND RELEASE, UNDERSTAND THAT [*4] THEY HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT AND SIGN IT VOLUNTARILY.

Practice Book [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Our Supreme Court has not yet ruled upon whether or not a waiver of negligence claims, by an adult participant in an athletic event, can be enforced. *Lombardo v. Maguire Group Inc., 1997 Conn. Super. LEXIS 1543,* Superior Court, judicial district of Middlesex at Middletown, Docket No. 077767 (June 6, 1997) (Arena, J.) While contract provisions which relieve a person from his own negligence are generally not favored in our courts. Such provisions, however, have been upheld under proper circumstances. *Griffin v. Nationwide Moving & Storage Co., 187 Conn. 405, 413, 446 A.2d 799 (1982).* Moreover, it is generally recognized that agreements exempting owners and operators of sports facilities from liability for negligence entered into with patrons of the facility are valid and enforceable against a patron. *Bashura v. Strategy Plus, Inc., 1997 Conn. Super. LEXIS 3084,* Superior [*5] Court, judicial district of Ansonia-

Milford at Milford, Docket No. 050871 (November 20, 1997) (Corradino, J.) (21 CONN. L. RPTR. 59).

The plaintiff opposes summary judgment claiming that the waiver and release relied upon by Reel Ice is insufficient to exempt defendants from liability because it does not specifically alert the plaintiff that he is releasing all claims against Reel Ice, including Reel Ice's own negligence, citing *Bashura, supra, 1997 Conn. Super. LEXIS 3084,* 21 CONN. L. RPTR. 59.

In *Bashura,* the court focused on the content of the waiver and release agreement and ruled that "it imposes no great burden on sports facilities engaged in high risk activities to require that their exculpatory agreements include language that explicitly states that the patron, if injured, waives any claim he or she might have against the operator of the facility even though the injury was caused by the operator's negligence." *Id.,* 63. Based on this rule, the court denied the operator's motion for summary judgment because "the waiver agreement made no explicit reference to the operator's negligence." *Id.*

Unlike the waiver agreement in *Bashura,* the agreement in the present case makes explicit [*6] reference to Reel Ice's negligence. The language of the release in the present case releases specified parties "from demands, losses or damages on account of injury, including death or damage to property, caused or alleged to be caused . . . by the *negligence of the releasees . . .*" It specifically states that the participant is releasing all of the involved parties from liability for damages resulting from the negligence of those parties, including the operator of the Enfield Twin Rinks. This language is more than sufficient to alert any participant that he is releasing Reel Ice from liability for its own negligence.

Because the plaintiff was presented the waiver by his team captain and was required to sign just prior to being allowed on the ice, he argues that he was unaware of the rights that he was giving up. However, there does not appear to be a material question of fact as to whether the plaintiff was conscious of the rights he was waiving. The general rule in our state is that where a person who is of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is that person's duty to read it and notice [*7] of its contents will be imputed to [that person] if [that person] negligently fails to do so. *Phoenix Leasing, Inc. v. Kosinski, 47 Conn. App. 650, 654, 707 A.2d 314,* (1998). The plaintiff had played in seven previous leagues and was an experienced adult league hockey player. The waiver form was a prerequisite each time the plaintiff played in one of these leagues. Moreover, there was no inequity of bargaining power between plaintiff

2000 Conn. Super. LEXIS 1926, *

and rink owner because the plaintiff was free to play at another rink or not to play at all.

The language and the title of the five paragraph release is unambiguous and above the plaintiff's signature contains language clearly putting the plaintiff on notice that he is giving up substantial rights.

Based on the analysis of the above facts, the release at issue in the present case is sufficient to relieve Reel Ice of liability and it is unnecessary to consider the second ground alleged in favor of this motion.

The motion for summary judgment by Reel Ice is granted.

Wagner, J.

Judge Trial Referee