UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICIA DELK, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02-cv-1310 (JCH) |
| | : | |
| GO VERTICAL, INC., | : | |
| a/k/a "Go Vertical," | : | |
| Defendant. | : | FEBRUARY 3, 2004 |

**RULING GRANTING
GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 20]**

Plaintiff Alicia Delk ("Delk"), a citizen of Oregon, brings this diversity action

sounding in negligence as a result of injuries she sustained when she fell while climbing at a

climbing gym in Stamford, Connecticut owned and operated by the defendant, GO

VERTICAL, INC. ("Go Vertical").  Go Vertical has moved to dismiss the complaint [Dkt.

No. 20], claiming that this action is barred by the release Delk signed indemnifying it from

liability for all claims arising from its negligence.  The court agrees and grants Go Vertical's

motion for summary judgment.

## I.    FACTS & PROCEDURAL HISTORY

On December 13, 2001, Delk and some friends visited a climbing gym located in

Stanford, Connecticut owned and operated by Go Vertical.  When she and Sara Mullins,

another first-time climber in the group, approached the sign-in desk upon entering, they

were each given a piece of paper and were told that they had to sign the form before they

would be allowed to climb.

The paper contained a waiver, entitled "ASSUMPTION OF RISK, RELEASE,

AND INDEMNIFICATION FOR GO VERTICAL, INC.," which read in pertinent part[1]:

> In consideration of my being allowed to use the Go Vertical, Inc. Climbing Wall ("Climbing Wall"), Climbing School ("School") and related training facilities ("Facilities"), I the undersigned, hereby agree to and acknowledge the following:
> 1. ASSUMPTION OF RISK: I hereby acknowledge and accept and agree that the sport of rock climbing and the use of the Climbing Wall involve inherent risks.  I received full information regarding the Climbing Wall and Go Vertical's facilities and had the opportunity to ask any questions that I wished.   I have examined the Climbing Wall and have full knowledge of the nature and extent of all the risks associated with rock climbing and the use of the Climbing Wall, including, but not limited to . . . .[2]

---

[1] The language cited in the main text of this opinion reflects the contractual language particularly pertinent to this ruling.  The deleted text is quoted in full in the footnotes that follow.

[2] The deleted list of risks reads in full:
a.  All manner of injury resulting from my falling off or from the Climbing  Wall and hitting the floor, wall faces, people or rope projections, whether permanently or temporarily in place;
b. Rope abrasion, entanglement and other injuries resulting from activities on or near the Climbing Wall such as, but not limited to, climbing, belaying, rappelling, lowering on ropes, rescue systems, and any other rope techniques;
c. Injuries resulting from the actions or omission of others, including but not limited to falling climbers or dropped items, such as, but not limited tp, ropes climbing hardware, wall parts or personal effects;
d. Cuts and abrasions resulting from skin contact with the Climbing Wall or any other surface;
e. Failure or misuse of ropes, slings, harnesses, climbing holds, anchor points, or any part of the Climbing Wall;
f. Failure to follow Go Vertical employeee instruction or failure to ask for information or assistance.

I further acknowledge that the above list is not inclusive of all possible risks associated with the use of the Climbing Wall and related training facilities and I agree that such list in no way limits the extent or reach of this Assumption of Risk, Release, and Indemnification.  If I see or hear anything that is questionable or dangerous, it is my responsibility to ask or inform Go Vertical employees until corrected or satisfactorily answered.

2. RELEASE: Inconsideration of my use of the Climbing Wall and/or Go Vertical's facilities and/or participation in any program or competition offered by or held at Go Vertical's facilities, I hereby release and discharge Go Vertical, Inc., their owners, affiliates, agents and employees, and their successors and assigns, from any and all liabilities, suits, claims and demand actions or damages (including attorneys fees and disbursement) incurred by me or are in any way related to or arising out of the use or intended use of the Climbing Wall and /or Go Vertical facilities whether supervised or not, including without limitation, all claims for property damage, personal injuries or wrongful death including any such claims which allege negligent acts or omissions of Go Vertical.

3. INDEMNIFICATION: I hereby agree to indemnify and hold harmless Go Vertical, Inc., affiliates, agents and employees, and their successors and assigns, from any and         all causes of action, claims, demands, losses and costs of any nature whatever arising out of or in any way relating to my use of the Climbing Wall or Go Vertical's facilities, including any such claims which allege negligent acts or omissions of Go Vertical.

. . .[3]

I expressly state that I have read, understand and am familiar with this document and all of its provisions and that I have full knowledge of the nature and extent of the risks incident to and inherent in the sport of rock climbing and my use of the Facilities or participation with the School.  I hereby voluntarily and knowingly assume those risks and I understand that I will be solely responsible for any injury, loss or damage, including death, which I sustain while using the Climbing Wall or Go Vertical's facilities and that by this agreement, I relieve Go Vertical from any and all liability for such injury, loss, damage or death.

---

[3] The deleted paragraph reads in full: "I understand and agree that Go Vertcical and its personnel reserve the right to deny access to its facilities to any individual permanently, or for a specified period of time, for any breach of any of Go Vertical's policies, rules and regulations or for any conduct that is viewed as unsafe or inappropriate.

. . .[4]

<u>See</u> Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl's Mem. Opp.") [Dkt. 26], Ex. H: Waiver Form.  With the exception of the title at the top of the release and the section headings, which were in capital letters, the language contained in the release was in the same font, one which looked virtually identical to Galliard BT 9-point of Word Perfect, Version 11.

Although Delk admits to having signed the form, she says she did not read it.  When asked whether she knew what the form was, she replied: "No, I just signed it.  I assumed it was something that allows you to climb."  <u>See</u> Pl's Mem. Opp., Ex. A: Delk Dep., at 27.  However, Delk also stated that, when she approached the employee at the sign-in desk, "[h]e said, 'It's a waiver.'  He said, 'You got to sign it before you climb.'"  <u>Id.</u>, Ex. A: Delk Dep., at 43.  When asked what she thought she was signing, Delk explained: "To tell you

---

[4] This final, deleted paragraph reads in full:
I expressly state that I am in good health and that I have no physical limitations which would preclude my safe use of the Climbing Wall and/or Go Vertical's facilities.  I am at least 18 years of age and otherwise legally competent to sign this agreement.  This Assumption of Risk, Release, and Indemnification shall be effective and binding upon me and upon my assigns, heirs, and representatives, executors and administrators.  (If under the age of 18, this release must also be signed and filled out below by the parent of the Minor.)  In the event that I file a lawsuit against Go Vertical, Inc., I agree to do so solely in the state of Connecticut, and I further agree that the substantive law of that state shall apply in that action without regard to the conflict of law rules of that state.  I agree that if any portion of this agreement is found to be void or unenforceable, the remaining portion shall remain in full force and effect.

the truth, I didn't pay much attention.  They sort of shuffled us in and said, 'You have to sign this before you climb.'  They said, 'Here you go.  Sign it.'  It was as quick as signing my name and it was out of my face, so I didn't really think about it again."[5]  Id., Ex. A: Delk Dep., at 28.  When asked whether she remembered having read the waiver, she responded:

> I don't recall.  Like I said, it was a very, very quick thing.  I don't even think we paid.  It was, "Hey, Crystal.  Hey, Jason.  How are you doing?  Have your friends sign this."  "Let's go in."  It was just, "Shove your shoes under there." . . .  I didn't really give it much thought.  It was "You have to sign this before you climb."  That's what I heard.  That's what I did.  I was with–Crystal and Jason had been there before and I honestly didn't give it much thought.  I was just taken [a]back by the place, looking around.

Id., Ex. A: Delk Dep., at 43-44.  Delk's friend, Sara Mullins, also states:

> The waiver was not, at all, explained to me.  I was not educated by the guy at the front desk about what the waiver was, what it meant, or what it really constituted.  It was very nonchalant.  Alicia was with me when the whole check-in and sign-in process was going on.  I believe that she received the same papers to sign and again was not provided with any of the information about the waiver and what it meant.

Id. at 28 (quoting Mullins' sworn statement).

At the time of this visit, Delk was a twenty-one-year-old student at University of

---

[5] Delk was a first-time climber, and Go Vertical asserts that it has a policy of asking customers when they enter whether they have climbed at the gym before.  If not, its policy is to give first-time patrons a waiver form and to ask them to sign it.  Go Vertical further claims that its policy is to ask first-time patrons if they have ever filled out a waiver before and, if the answer is no, to show new customers the form, ask them to read and sign it.  For purposes of this motion, the court accepts Delk's testimony that this procedure was not followed in her case.

Oregon who had just completed the fall semester of her junior year.  She had no experience

rock climbing before this visit, and she received no training from Go Vertical as its patron.

The visit concluded without incident.

However, the following day, Delk returned with friends for her second visit.  As a

returning customer who had already signed a waiver, she was not asked to sign another

waiver.  While she was "bouldering"[6] on a rock of about sixteen feet in height and had

reached a height of perhaps as much as fifteen feet, Delk realized that she did not know how

to get down and became frightened.  The sole employee available to assist her was in

another location, either climbing a rock wall or belaying on the rock wall.  Because she had

witnessed others jump down in a certain position, and because her more experienced friend

advised her to do so, Delk attempted to jump in such a position.  She landed on her

buttocks, sustaining burst fractures in her spine, injuries that form the basis of this lawsuit.

Delk commenced this negligence action by filing a complaint, dated July 1, 2002, in

Connecticut state court.  See Notice of Removal [Dkt. 1], Complaint (attached).  On July

30, 2002, Go Vertical removed the case to this court, alleging federal diversity jurisdiction

pursuant to 28 U.S.C. § 1332.  The complaint seeks to recover compensatory damages

arising from Delk's physical and psychological injuries that it alleges resulted from Go

---

[6] The parties both define "bouldering" as climbing a rock formation without protection
or climbing aids.

Vertical's "negligence and/or carelessness."[7]  Id.  In its Answer [Dkt. 14], Go Vertical

asserts the special defenses of contributory negligence and waiver.

On August 29, 2003, Go Vertical moved for summary judgment [Dkt. No. 20]

based on its waiver defense.  Delk opposes the motion, arguing that she did not legally

assent to the waiver and, in the alternative, that the waiver itself is not valid and therefore

cannot be enforced.  See Pl's Mem. Opp., at 25, 29.  For the reasons stated below, the court

grants Go Vertical's motion for summary judgment.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only when no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c));

Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000).  The

moving party bears the burden of showing that no genuine factual dispute exists.  Carlton v.

---

[7]  Specifically, the complaint alleges that Go Vertical failed to adequately or properly:
1) supervise Delk; 2) instruct or train her with respect to bouldering; 3) maintain the
bouldering equipment; 4) put in place adequate safety procedures concerning bouldering; 5)
provide adequate safety equipment with respect to bouldering; 6) provide adequate staffing;
7) put in place adequate safety equipment in general; 8) operate, maintain, and control the
bouldering equipment; 9) operate the premises and its equipment; 10) avoid foreseeable
injuries to patrons; 11) warn patrons of risks in using the facilities; 12) failed to follow
acceptable rules or regulations for safety at climbing facilities; 13) give Delk notice of
dangerous and unsafe conditions; and 14) failed to take proper preventative precautions.  The
Complaint also alleges that Go Vertical negligently lulled Delk into a false sense of security and
failed to exercise due care under the circumstances and in general.  Id.

Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential

Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In assessing the

record to determine if such issues exist, all ambiguities must be resolved and all inferences

drawn in favor of the party against whom summary judgment is sought.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Heilweil v. Mount Sinai Hosp., 32 F.3d

718, 721 (2d Cir.1994).  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge."

Anderson, 477 U.S. at 255.  When reasonable persons applying the proper legal standards

could differ in their responses to the questions raised on the basis of the evidence presented,

the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d

Cir. 2000).

        Once the moving party has met its burden, in order to defeat the motion the

nonmoving party must "set forth specific facts showing that there is a genuine issue for

trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find

in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may

not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d

Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

Additionally, a party may not rest on the "mere allegations or denials" contained in his

pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.

1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)

(holding that party may not rely on conclusory statements or an argument that the affidavits

in support of the motion for summary judgment are not credible).

### B.    Assent

Delk attempts to raise an genuine question of material fact as to whether she

properly assented to the waiver.  In her memorandum, Delk claims that "[she] was rushed

through the process" and "was not provided an opportunity to read the waiver before

signing it."  See Pl's Mem. Opp., at 25.  She also claims that she simply did not read the

waiver form she signed.  The court concludes, however that, even when viewing the facts in

the light most favorable to Delk, no reasonable juror could do otherwise than conclude that

she assented to the waiver.

In Connecticut, "the general rule is that where a person of mature years and who can

read and write signs or accepts a formal written contract affecting his pecuniary interests, it

is his duty to read it and notice of its contents will be imputed to him if he negligently fails

to do so."  Dimaggio v. Labreque, No. CV000438800S, 2003 Conn. Super. LEXIS 2823,

*7 (Conn. Super. October 9, 2003)(quoting DiUlio v. Goulet, 2 Conn. App. 701, 704

(Conn. App. 1984)); Lombardo v. Maguire Group, Inc., No. CV 96077767, 1997 Conn.

Super. LEXIS 1543 (Conn. Super. June 6, 1997)(citing DiUlio); Golden v. Curves

International, Inc., No. CV020818216S, 2003 Conn. LEXIS 1441, *2 (Conn. Super. LEXIS May 1, 2003)(citing Connors v. Reel Ice, Inc., No. CV 980579993S, 2000 Conn. Super. LEXIS 1926 (Conn. Super July 26, 2000)).  Connecticut courts have repeatedly held that plaintiffs cannot escape the consequences of a waiver into which they voluntarily entered merely by establishing that they did not read it.  See Fischer v. Rivest, No. X03CV000509627S, 2002 Conn. Super. LEXIS 2778, *31 (Conn. Super. August 15, 2002); cf. DiUlio, 2 Conn. App. at 704 (reiterating rule that notice of contents will be imputed despite failure to read but also noting that this rule is subject to qualification); Caron v. Waterford Sports Center, No. X07CV010077059S, 2002 Conn. Super. LEXIS 3996, *10-11 (Conn. Super. December 13, 2002)(rejecting argument that Caron did not read, and therefore did not assent to, waiver because there was no evidence that employee rushed him to sign and because he had signed similar waivers in the past); Smith v. Connecticut Racquetball Club, No. CV97342983S, 2002 Conn. Super. LEXIS 1869, *9 (Super. Ct. June 3, 2002)(plaintiff cannot raise an issue of material fact concerning assent merely by alleging that "she did not discuss the waiver with anyone, was not told what the waiver contained, was not told to read it or discuss it with an attorney and that she would not have signed the waiver had she known that it released the defendant from liability for the defendant's own negligence").  Therefore, Delk cannot met her burden of producing evidence sufficient to raise an issue of material fact that she did not assent to the terms of

the waiver simply by establishing that she did not read the waiver.

The court also concludes that Delk's allegation that Go Vertical's employee improperly prevented her from reading the waiver by rushing her is conclusory and unsupported by the evidence.  The argument that Delk's assent was vitiated by the fact that Go Vertical's employee rushed her, and thereby deprived her of the opportunity to read the waiver, would be reason to deny the motion for summary judgment, had any evidence she submitted supported such an allegation.

In support of her argument, Delk relies on reasoning similar to that employed by the Connecticut Court of Appeals in <u>DiUlio</u>, an opinion which reaffirmed the general "duty to read" rule but also noted that "this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter."  <u>See</u> 2 Conn. App. at 704 (quoting <u>Ursini v. Goldman</u>, 118 Conn. 554, 562 (1934)).  The Appellate Court in <u>DiUlio</u> reversed the trial court and found that a genuine factual dispute existed as to assent based on a counteraffidavit submitted by the plaintiff in which she stated that she had failed to read the release before signing it because the gatekeeper of the auto race track she was trying to enter as a spectator had "rushed" her and others in a long admission line through the gate and thereby prevented her from scrutinizing the document.  Similarly, the Connecticut Superior

11

Court in <u>Golden v. Curves International, Inc.</u>, No. CV020818216S, 2003 Conn. LEXIS

1441 (Conn. Super. LEXIS May 1, 2003), relying on <u>DiUlio</u>, refused to grant judgment in

favor of the defendant health club because it concluded that "there may be a question of fact

whether a first time health club patron would view the tipping over of an exercise machine

as a foreseeable risk covered by a waiver agreement signed under rushed circumstances at an

opening day enrollment, claimed to have taken place in a 'mad house' and a 'chaotic'

atmosphere." <u>Id.</u> at *2-3.

   In contrast, here, Delk's deposition suggests that it was either the presence of her

friends, who had already signed waivers as previous customers of Go Vertical, or even

Delk's own wonder and excitement when she arrived at the climbing gym, that prevented

her from reading the waiver she signed.  As Delk testified, "I was with–Crystal and Jason

had been there before and I honestly didn't give it much thought.  I was just taken [a]back

by the place, looking around."  Pl's Mem. Opp., Ex. A: Delk Dep., at 27.  Unlike the facts

in <u>DiUlio</u>, Delk does not claim that there was a long line of waiting customers who were

also pressured into signing.  Evidence that the atmosphere was "chaotic," as in <u>Golden</u>, or

even rushed as a result of behavior by the Go Vertical employee are totally absent here.

Delk states only that the process was very "quick."  <u>Id.</u>, Ex. A: Delk Dep., at 43.

Allegations by Delk's friend Mullins that the employee at the sign-in desk was "nonchalant"

when requesting that they sign the waiver are simply insufficient to support a claim that

Delk was rushed by Go Vertical or to suggest that something "ha[d] been said or done to mislead [Delk] or to put a man of reasonable business prudence off his guard in the matter." DiUlio, 2 Conn. App. at 704 (quoting Ursini v. Goldman, 118 Conn. 554, 562 (1934)).  There is simply no evidence before the court that raises a genuine question as to whether Go Vertical or its employees deprived Delk of the opportunity to review the waiver or coaxed her to avoid reading it before she signed.  See Caron, 2002 Conn. Super. LEXIS 3996, at *11.  Therefore, the court concludes that, even when viewing the facts in the light most favorable to her, Delk has not met her burden of producing evidence sufficient to raise an issue of material fact that she did not assent to the terms of the waiver.

C.    **Validity of Waiver Itself**

Delk further asserts that, even assuming she assented to its terms, the waiver is not valid because it does not satisfy the strict requirements under Connecticut law for exculpatory or indemnification clauses and therefore does not overcome the presumption against validity with respect to contract provisions that seek to relieve persons from their own negligence.  The case law simply does not support this contention.

To begin, although Delk has not raised any factual issues as to the scope of the waiver, the court notes that the exculpatory clause clearly and expressly purports to absolve

Go Vertical of liability resulting from its own negligence.[8]  In its recent decision in <u>Hyson</u>

<u>v. White Water Mountain Resorts of Connecticut, Inc.</u>, 265 Conn. 636 (2003), the

Connecticut Supreme Court concluded:

> [A]lthough "in many jurisdictions a written contract of indemnity will not be
> construed to indemnify against the indemnitee's own negligence unless there is a
> clear expression of that intention, and then the contract is strictly construed . . .[, a]
> specific reference to negligence of the indemnitee is not always required."  In keeping
> with the well established principle, however, that "the law does not favor contract
> provisions which relieve a person from his own negligence," we conclude that the
> better rule is that a party cannot be released from liability for injuries resulting from
> its future negligence in the absence of language that expressly so provides.

<u>Id.</u> at 642-43 (internal citations omitted); <u>see</u> <u>also</u> <u>Foley v. Southington-Cheshire</u>

<u>Communtiy YMCAS, Inc.</u>, No. CV00502023, 2002 Conn. Super. LEXIS 990, *3-9

---

[8] Arguing that the format of the release form raises a triable issue of fact sufficient to
defeat Go Vertical's motion for summary judgment, Delk cites language from the Court of
Appeals decision in <u>B & D Associates v. Russell</u>, 73 Conn. App. 66, 72 (Conn. App. Ct.
2002):

> Not only does this stringent standard require that the drafter of such an
> agreement make its terms unambiguous, but it mandates that the terms be
> understandable as well. Thus, a provision that would exempt its drafter from any
> liability occasioned by his fault should not compel resort to a magnifying glass
> and lexicon . . . .

<u>Id.</u> at 72 (quoting <u>Griffin v. Nationwide Moving & Storage Company</u>, 187 Conn. 405, 413
(1982)).  However, after examining the waiver form, this court easily concludes that the
provisions of the waiver were "clear and coherent," <u>id.</u>, as required by the case law.  Although
the font of the waiver was on the small side, there was no "fine print," as the entire document
appears to have been in the same size font.  Neither a magnifying glass nor a lexicon wold have
been necessary in order to read, comprehend, and legally assent to the terms of waiver.

(Conn. Super. March 28, 2002)(concluding, before <u>Hyson</u>, that waivers must contain specific language such as the word "negligence" to absolve sports facilities of liability for their own negligence); <u>Bashura v. Strategy Plus, Inc.</u>, No. CV 950050871, 1997 Conn. Super. LEXIS 3084, *15-16 (Conn. Super. Nov. 20, 1997) ("[T]he fairer rule [would] require the exculpatory agreement to specifically alert the patron that he or she by signing the waiver is releasing the operator of the facility from injury caused by the operator's own negligence."); <u>but</u> <u>see</u>, <u>e.g.</u>, <u>Krazek v. Mountain River Tours, Inc.</u>, 884 F.2d 163, 166 (4th Cir. 1989)("To hold otherwise would create a requirement that to bar negligence claims all releases must include the words 'negligence' or 'negligent acts.'  We decline, however, to formulate a rule that requires the use of specific 'magic words' in contracts such as this one.").  In fact, the express terms of the waiver at issue in this case provide for the release of liability for "negligent acts" in two separate paragraphs.[9]  Thus, by its express terms, the

---

[9] As noted above, the release section of the waiver reads in relevant part:

I hereby agree to indemnify and hold harmless Go Vertical, Inc. . . ., from any and all causes of action, claims, demands, losses and costs of any nature whatever arising out of or in any way relating to my use of the Climbing Wall or Go Vertical's facilities, including any such claims which allege <u>negligent acts or omissions of Go Vertical</u>.

<u>See</u> Pl's Mem. Opp., Ex. H: Waiver Form (emphasis added).  Likewise, indemnification section reads in relevant part:

I hereby release and discharge Go Vertical, Inc. . . ., from suits, claims and demand actions or damages (including attorneys fees and disbursement) incurred

scope of the waiver clearly purported to release Go Vertical from claims resulting from its own negligence.

Admittedly, the Connecticut Supreme Court in <u>Hyson</u> refrained from deciding the precise question facing this court.  The <u>Hyson</u> Court held that, because the contract before it did not include express language indemnifying the proprietor of the recreational facility for its own negligence, it did not have such an effect.[10]  Notably, the Court explicitly left open the question of whether an agreement having such express language would be enforceable.  <u>See</u> 265 Conn. at 640, 643 n. 11.

Notwithstanding this uncertainty in state supreme court jurisprudence, state trial courts have been strikingly consistent in upholding as valid and enforceable "agreements exempting owners and operators of sports facilities from liability for negligence entered into with patrons of the facility," <u>Smith</u>, 2002 Conn. Super. LEXIS 1869, *3 (citing

---

by me or are in any way related to or arising out of the use or intended use of the Climbing Wall and /or Go Vertical facilities whether supervised or not, including without limitation, all claims for property damage, personal injuries or wrongful death <u>including any such claims which allege negligent acts or omissions of Go Vertical</u>.

<u>Id.</u> (emphasis added).

[10]  Two Justices dissented in <u>Hyson</u>, arguing that even releases that do not contain exculpatory clauses explicitly stating that the signatory is releasing all claims sounding in negligence should be given such effect.  <u>See</u> 265 Conn. at 644-50 (Norcott, J., dissenting, with whom Borden, J., joins).

<u>Slauson v. White Water Mountain Resorts of Connecticut</u>, No. CV990432460, 2001 Conn. Super. LEXIS 1489, *2-3 (Conn. Super. May 30, 2001), except in limited circumstances warranting a public policy exception to the rule of enforceability,[11] and despite the disfavor with which the law traditionally views contract provisions which relieve a person from his own negligence, <u>see Griffin v. Nationwide Moving & Storage Co.</u>, 187 Conn. 495, 413 (1982).  <u>See</u>, <u>e.g.</u>, <u>Dimaggio</u>, 2003 Conn. Super. LEXIS 2823 (waiver by sports facility patron is valid and enforceable); <u>Gagliardi v. World Gym Fitness</u>, No. CV000500627S, 2002 Conn. Super. LEXIS 3188, (Conn. Super. Aug. 27, 2002)(same); <u>Fischer</u>, 2002 Conn. Super. LEXIS 2778 (same); <u>Smith</u>, 2002 Conn. Super. LEXIS 1869 (same); <u>Mattei v. City of New Haven</u>, No. CV990265897S, 2001 Conn. Super. LEXIS 1690 (Conn. Super. June 19, 2001)(same); <u>Lombardo</u>, 1997 Conn. Super. LEXIS 1543 (same); <u>accord</u> <u>Foley</u>, 2002 Conn. Super. LEXIS 990 (waiver invalid due to failure to mention "negligence").  Only waivers that do not satisfy the strict language requirements set forth by the Connecticut Supreme Court in <u>Hyson</u> have been deemed unenforceable with

_____

[11] "Connecticut courts . . . recognize public policy exception for adults who sign waivers on behalf of minors . . . , where there is unequal bargaining power . . . , or when the release would exempt a party from liability for violating a duty established by a statute or ordinance . . . ." <u>Id.</u> (citing cases); <u>see also</u> <u>Mattei v. City of New Haven</u>, No. CV990265897S, 2001 Conn. Super. LEXIS 1690, *8 (Conn. Super. June 19, 2001)("This is not a case involving the violation of statutes or ordinances protecting human life, or human health, nor is this a case involving a minor or an adult acting on behalf of a minor.  Thus, the public policy reasons allegedly prohibiting waiver of liability are not sufficiently clear to bar the special defense of waiver of liability.")(internal quotations omitted).

17

respect to negligence suits brought against sports facilities by their patrons.  See Potts v.
White Water Mountain Resorts of Connecticut, No. 550961, 2001 Conn. Super. LEXIS
2433 (Conn. Super. Aug. 24, 2001)(waiver invalid because language of waiver mentioned
only "inherent and other risks involved in snowtubing" but not liability resulting from
defendant's own negligence); Malin v. White Water Mountain Resorts of Connecticut, Inc.,
No. 432774, 2001 Conn. Super LEXIS 768 (Conn. Super. March 16, 2001)(same).  But
cf. Salvatore v. 5 D's, Inc., No. CV990153131, 2001 Conn. Super. LEXIS 542, *6 (Conn.
Super. February 20, 2001)(suggesting in dicta that "[h]ad [the plaintiff] been totally
unfamiliar with the sport and equipment, the court would be more inclined to accept his
argument that he relied upon the defendant to warn him of the dangerous conditions
regarding the skates and that he did not fully appreciate the import of the waiver he chose
to sign before skating"); Caron v. Waterford Sports Center, No. X07CV010077059S, 2002
Conn. Super. LEXIS 3996, *10-11 (Conn. Super. December 13, 2002)(rejecting argument
that Caron did not read, and therefore did not assent to, waiver in part because he had
signed similar waivers in the past).  In light of the dicta in Hyson and the weight of
Connecticut trial court precedent, this court holds that the waiver is valid and enforceable.

## III.   CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. No.
20] is GRANTED.  The court directs the clerk to close the case.

**SO ORDERED.**

Dated this 3rd day of February, 2004, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge